# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**RICHARD DUFFY,**

      **Plaintiff,**

vs.                                              Case No.: 8:06-cv-16-T-23MSS

**M/V DONNA ANN,** *et al.*,

      **Defendants.**

_____/

## ORDER

**This comes** before the Court for consideration of Plaintiff's Motion for an Evidentiary Hearing to Determine Maintenance and Cure (the "Motion") (Dkt. 7) and Defendants' response in opposition thereto.[1] In the Motion, Plaintiff is asking the Court to order Dolphin to pay him a maintenance *per diem* based on Plaintiff's actual living expenses, that is, increase the maintenance *per diem* from its current rate of $40 to $106; satisfy his medical bills; and, award him attorney's fees and interest for the filing of the Motion, as well as "award a penalty" against Dolphin to insure that other crewmen will not suffer as he claims he has.

The Undersigned held an evidentiary hearing to address the parties' arguments. During the hearing, Plaintiff testified on his own behalf and presented

---

[1] Defendants are being represented by counsel from Dolphin's liability insurance carrier, Great American Insurance Company ("Great American").

the Court with the following exhibits: Ex. 1, Composite of Plaintiff's Daily Expenses; Ex. 2, Composite Exhibit of Plaintiff's Medical Expenses; and, Ex. 3, Listing of Monthly Medical Maintenance Expenses.

Ms. Margaret Lewis testified on Defendants' behalf in her capacity as President of Dolphin. Defendants provided the Court with the following exhibits: Ex. 1, Fax letter to Alicia Hooper from Plaintiff's counsel dated November 28, 2005; Ex. 2, Miscellaneous Loss Notice dated November 28, 2005; Ex. 3, Letter to Plaintiff's counsel from Great American dated December 19, 2005; Ex. 4, Letter to Great American from Plaintiff's counsel dated January 3, 2006; Ex. 5, Letter to Plaintiff's counsel from Great American dated January 4, 2006; and, Ex. 6, Computer Printout of Plaintiff's Medical Expenses. Finally, the Court accepted, without objection from Plaintiff, the Affidavit of Mr. Sean Curry, which was attached to Defendants' response. Following the hearing and with the Court's permission, Plaintiff submitted an additional Memorandum in Support of his request for additional maintenance and cure (Dkt. 29).[2]

**I.   Procedural History:**

Plaintiff filed his Complaint on January 4, 2006 (Dkt.1). Plaintiff sued Defendant the Donna Ann *in rem* and Defendant, Dolphin *in personam*, for maintenance and cure stemming from a leg injury he sustained when attempting to disembark the tugboat named Donna Ann.

---

[2] Defendants' counsel did not file an additional Memorandum.

In Count I of his Complaint, Plaintiff seeks relief in the form of maintenance and cure, living and medical treatment expenses as required by general maritime law, including bonuses, wages, and penalty wages due, plus prejudgment interest and the cost of this action, as well as any other relief the Court deems appropriate. On January 27, 2006, Plaintiff filed a Motion to Determine Maintenance and Cure, and for Attorney's Fees and Costs and requested an evidentiary hearing on the issues raised (Dkt. 7).

## II.   Factual Findings:[3]

Plaintiff, employed by Dolphin, served as captain of the vessel the Donna Ann. On November 14, 2005, while serving as captain of the Donna Ann, Plaintiff suffered a crushing injury to his right knee for which he requires continued treatment. (Pl. Ex. 3, Letter of Dr. Clayton W. Hopkins)

Since the date of his injury, Plaintiff has been unable to work and has been incurring medical bills for the treatment related to his injury. Plaintiff provided billing evidence of his injury-related medical expenses. (Pl. Ex. 2) Specifically, Plaintiff has accrued medical expenses totaling $7,341.29, without interest, through the date of the filing of his motion.

From the date of Plaintiff's accident, November 14, 2005, through December 6, 2005, Dolphin did not pay Plaintiff any money for maintenance.

---

[3] During the hearing, the parties reached agreement on a majority of the issues raised in the Motion. Any "factual finding" that is not supported by one of the parties' exhibits is based on the parties' testimony at the hearing.

Beginning December 6, 2005, and retroactive to the date of the accident, Dolphin paid Plaintiff a $20 *per diem* for maintenance. Beginning on or around January 4, 2006, and since that time, Dolphin has paid Plaintiff a $40 *per diem* for maintenance (retroactive to the date of the accident).

Plaintiff's submitted daily living expenses total $106 per day, which include expenses such as rent, utilities, cellular and land based telephone, child support, auto insurance, and miscellaneous expenses. The miscellaneous expenses section, totaling $980.00 per month, is comprised of gas, groceries, school, sports and clothing expenses for Plaintiff's son, car repair and entertainment. (Pl. Ex. 1)

During the hearing, Plaintiff stipulated to the rent and utility bill payments proposed by Defendants, specifically agreeing to a *per diem* of $34.04 comprised of rent, utilities and food.[4]

Plaintiff also agreed to withdraw his requests that Dolphin include gasoline, child support, cable TV, and, expenses related to his son, including his son's

---

[4] Plaintiff calculated the *per diem* for rent at $21.70 per day (based on $660.00 total monthly rent); $4.10 per day for electric (which Defendant recalculated at $3.30 per day); and, $1.10 per day for water (which Defendant recalculated at $1.02 per day). Adding these amounts together results in a per diem range between $26.02 to $26.90. Defendant did not contest a maintenance *per diem* falling within this range. The Court adopted the higher figure of $26.90 with the stipulation of the parties. In addition, after testimony from Plaintiff, it was determined that Plaintiff's total share of the $500 grocery bill ($125 per week) was approximately $200 or $50.00 per week or approximately $7.14 per day for Plaintiff's food. Adding $26.90 and $7.14, the parties arrived at the stipulated figure of $34.04.

4

portion of the monthly food expenditures, as part of the maintenance *per diem* calculation. The parties also resolved all outstanding "cure" issues. "Cure" refers to all medical treatment expenses, including prescription drug costs. Specifically, Defendant agreed to satisfy all of Plaintiff's outstanding medical bills. Defendant informed the Court that it always paid (and intended to continue to pay) Plaintiff's medical bills upon receipt, following a brief internal audit.[5] In addition, Defendant agreed that any prescription expenses Plaintiff has incurred (or will require going forward), while not allowed under the maintenance *per diem*, would be reimbursed by Defendant as part of Plaintiff's cure expenses. Finally, Defendant agreed that as part of "cure" it would reimburse Plaintiff for his use of his car to travel to and from his various doctors' offices under the current reimbursable mileage amount allowed by the Internal Revenue Service, provided Plaintiff could provide accurate reports of those expenses.

### III.    Discussion

**Motion to Determine Maintenance and Cure, and for Attorney's Fees and Costs (Dkt. 7)**

_____**Cure**

Because Defendant has agreed to satisfy Plaintiff's outstanding and future injury-related medical bills and prescription related costs, these issues, with the

---

[5] Dolphin claimed that prior to the hearing it never received the medical bills totaling $7,341.29 but only received medical bills around December 28, 2005, totaling $1,915.00 (Dkt. 10, pp. 1-2).

exception of the timeliness of the medical payments for purposes of determining Plaintiff's entitlement to attorney's fees, are no longer at issue.

**Maintenance**

Because of the parties' stipulations during the hearing as to the majority of items Plaintiff claimed as part of his maintenance *per diem*, the only issue remaining before this Court concerning maintenance is whether Plaintiff's land based and cellular telephone costs can appropriately be considered as part of "maintenance."

In support of his maintenance request related to other expenses, Plaintiff cites several cases supporting his right to maintenance until such time as he reaches maximum medical improvement. Maintenance payments are comprised of living expenses - food, lodging and, if applicable, lost wages, as required by general maritime law.

In response, Dolphin informs the Court that it does not dispute that Plaintiff is entitled to maintenance; however, Dolphin claims that it has paid Plaintiff the reasonable rate of maintenance of $40.00 per day. Dolphin claims that under law an injured seaman is entitled to the "actual expenses incurred for food and lodging, but only up to a reasonable amount" (Dkt. 10 at 2, citing to Hall v. Noble Drilling, Inc., 242 F.3d 582, 587 (5th Cir. 2001). Dolphin further claims that:

> [T]he amount of maintenance to be paid does not include expenses incurred for the food and support of the seaman's family, or for any and all expenses incurred as a consequence of

> the seaman having to live at home during his period of rehabilitation. Thus, expenses for items such as telephone, automobile, cable TV are not compensable. . . . On the other hand, the expenses necessary to provide the seaman "habitable housing," such as heat, electric and utilities, are payable.

(Dkt. 10 at p. 3)

In support of its response, Dolphin attached the affidavit of Mr. Curry, senior claims adjustor at Great American, which provided a detailed time and expenditure line.

Whether or not Plaintiff is entitled to reimbursement for his telephone expenses is resolved by applying the tripartite test enunciated in <u>Hall v. Noble Drilling</u>. There the Fifth Circuit advised that the court first must estimate two amounts, the seaman's actual costs of food and lodging. Second, the court must compare those actual expenses to reasonable expenses and, if actual expenses exceed reasonable expenses, the court should award reasonable expenses. Otherwise, the court should award actual expenses. Third, if the court concludes that plaintiff's actual expenses were inadequate to provide him with reasonable food and lodging, the plaintiff is entitled to the amount that the court has determined is the reasonable cost of food and lodging. <u>Hall</u>, 242 F.3d at 590.

Against this legal backdrop, Plaintiff claims that he uses his land based and cellular phones to coordinate his medical care and look for employment. Even if true, during the hearing, Plaintiff admitted that his cellular phone bill included his son's telephone charges and thus, the expenses he presented to the Court were

7

not exclusive to him. This lack of exclusivity is in itself problematic. More importantly, however, the court in Hall specifically noted that "[o]ther expenses, such as telephone service, clothing, toiletries, and travel are not part of maintenance." Hall, 242 F.3d 588, n.17.

Plaintiff's reliance on Flores v. Carnival Cruise Lines, 47 F.3d 1120 (1995), to expand the basic components of maintenance beyond the dictates of Hall is misplaced. A review of Flores discloses that it does not represent an "expansion" of the components of maintenance. Rather Flores addresses the question of whether guaranteed tips should be considered as wages when unearned wages are considered as part of the maintenance and cure calculation. In this case, Plaintiff was paid all of the wages to which he was entitled after his accident and his Complaint contains no mention or support for entitlement to "unearned wages."

Thus, having considered the evidence presented during the hearing and the legal authority cited by Defendant, the Undersigned Reports and Recommends that Plaintiff's *per diem* going forward remain at the amount currently provided, that is, of $40.00. This amount was deemed reasonable by Great American prior to the hearing and remains so after all of the evidence presented. While the parties stipulated that $34.04 was the closest estimate of Plaintiff's actual expenses, Defendant has not requested that the *per diem* be reduced. In addition, under the logic of Hall, a plaintiff is entitled to the amount

8

that the court has determined is the <u>reasonable</u> cost of food and lodging. Under the circumstances presented, the Undersigned finds that $40.00 is a reasonable *per diem*.

**Attorney's Fees**

Plaintiff also seeks attorney's fees for the filing of the Motion. Plaintiff is entitled to attorney's fees only in circumstances in which "the shipowner was callous and recalcitrant in willful and persistent refusal to pay maintenance and cure, which was plainly owed." See <u>Stevens v. McGinnis, Inc.</u>, 82 F.3d 1353, 1360 (6th Cir. 1996). See also <u>Rodriguez v. Bahama Cruise Line, Inc.</u>, 898 F.2d 312, 316 (2d Cir. 1990) (stating that "[w]hen a ship operator fails to make a prompt, good faith investigation of a seaman's claim for maintenance and cure, or otherwise takes a 'callous' or 'recalcitrant' view of its obligations, the seaman may recover legal expenses on top of maintenance and cure.")

In <u>Hines v. J.A. LaPorte, Inc.</u>, 820 F.2d 1187 (11 th Cir. 1987), the Eleventh Circuit acknowledged that when considering whether to award attorney's fees and, in that case punitive damages, although there "is not bright line to measure arbitrary conduct, the Fifth Circuit has identified examples of willfulness meriting punitive damages and counsel fees: (1) laxness in investigating a claim; (2) termination of benefits in response to the seaman's retention of counsel or refusal of a settlement offer; [and] (3) failure to reinstate benefits after diagnosis of an ailment previously not determined medically." <u>Hines</u>, 820 F.2d at 1190.

9

Plaintiff argues that under the logic of Sullivan v. Tropical Tuna, 963 F. Supp. 42 (D. Mass. 1997), he is entitled to recover attorney's fees from Defendants even if their behavior is less than egregious, but is still "willful and unreasonable." Plaintiff points out that the court in Tropical Tuna allowed fees, finding that a one-month delay in authorizing payment for surgery to repair the plaintiff's injured finger constituted a willful failure to provide cure for which Plaintiff was entitled to attorney's and compensatory fees. In addition, Plaintiff claims that under Sullivan, Dolphin itself had an affirmative duty to investigate Plaintiff's claims that the investigation should not have been undertaken by Great American. Plaintiff is misguided as to the law and the facts.

In Tropical Tuna, the court answered the question of whether a shipowner is required to guarantee payment of medical expenses prior to treatment of an injured seaman. Answering in the affirmative, the court stated that "[i]n light of the realities of the current health care system, this Court observes that an injured seaman will often be unable to obtain the necessary medical treatment unless he can first demonstrate the ability to pay." Id. at 45. Underscoring the court's decision in Tropical Tuna was the insurer's complete lack of responsiveness to plaintiff and plaintiff's medical needs. In its decision the court specifically noted the defendant's unreasonable, unexplained and significant delay in corroborating the plaintiff's claims. Id. at 45-46. The Tropical Tuna case acknowledged that "[t]he vast majority of cases in which courts have awarded attorney's fees . . .

10

involved a <u>failure</u> to pay maintenance and cure rather than a mere delay." <u>Tropical Tuna</u>, 963 F. Supp. 46 n.4 (emphasis added).

In this case, Plaintiff received medical treatment on the date of his accident and has been receiving follow up care on a consistent and uninterrupted basis since that date. Unlike the seaman in <u>Tropical Tuna</u>, Defendants have done nothing to delay or obstruct Plaintiff in the receipt of medical care.

Additionally, the facts establish that under the standard set forth in <u>Stevens v. McGinnis, Inc.</u>, Plaintiff is not entitled to attorney's fees or any other compensatory monetary recovery. Specifically, at the hearing, Defendants called Ms. Margaret Lewis, President of Dolphin, to testify about Dolphin's response to Plaintiff's injury. Ms. Lewis testified that she first learned of Plaintiff's injury on November 15, 2005. Upon learning of Plaintiff's injury, Ms. Lewis testified that she called Mr. Curry at Great American and that he instructed her to begin maintenance payments to Plaintiff.[6] Following that discussion and based thereafter on the information provided by Plaintiff on December 6, 2005, Ms. Lewis made the maintenance payments to Plaintiff. Ms. Lewis further testified that thereafter she wrote four additional checks to Plaintiff dated January 7, 2006; January 18, 2006; February 8, 2006; and, March 3, 2006. Finally, Ms. Lewis testified that she first wrote the checks for $20 per day and was instructed, after

---

[6] Ms. Lewis further testified that she did not hesitate to contact her insurer upon learning of Plaintiff's accident.

11

receipt of further information from Plaintiff, to write the checks for $40 per day. Once Dolphin exhausted its insurance deductible, Great American began making payments directly to Plaintiff.

Plaintiff retained his current counsel on November 22, 2006, prior to receipt of his first maintenance check, but after he had collected his last paycheck from Dolphin.  Evidence produced during the hearing shows that on November 28, 2005, Plaintiff's counsel sent a letter via facsimile to Ms. Alicia Hooper, an insurance agent with Tampa Bay Underwriters, without sending a copy to Ms. Lewis.  In the November 28, 2005, letter Plaintiff's counsel demanded $50.00 maintenance *per diem* to be paid directly to Plaintiff until such time as Plaintiff was able to provide documentation to support his total living expenses.  On December 5, 2005, Mr. Curry contacted Ms. Lewis and instructed her to write Plaintiff's first check using a $20.00 maintenance *per diem*.  Upon receipt of additional information from Plaintiff, Defendant increased Plaintiff's maintenance *per diem* to $40.00 per day, retroactive to the date of the accident.  To date, Plaintiff has been receiving a $40.00 maintenance *per diem*.

In fact, the record is clear that, with the exception of the initial lag between Plaintiff's accident and receipt of his first payment, both Dolphin and Great American have been responsive to Plaintiff and Plaintiff's counsel.  For example, within one week of receiving the appropriate documents from Plaintiff, Defendants increased Plaintiff's maintenance from $20.00 per day to $40.00 per

12

day retroactive to the date of the accident. A three week delay from the date of Plaintiff's accident and a one week delay from the date Plaintiff's counsel submitted the maintenance request, coupled with immediate retroactive payment of maintenance that actually exceeded Plaintiff's actual expenses, simply does not reflect callousness or recalcitrance on the part of the Defendants.

**IV.    Conclusion**

For the reasons set forth above, the Undersigned reports and recommends that Plaintiff's *per diem* going forward remain at $40.00 and that the parties bear their own costs and fees associated with the bringing and defending of this Motion.

**RESPECTFULLY RECOMMENDED** in Tampa, Florida on this 10th day of August 2006.

_____
MARY S. SCRIVEN
United States Magistrate Judge

Copies to:

Counsel of record

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).